685 F.2d 1311
 ALABAMA POWER COMPANY, Utah Power & Light Company, Pacific
Gas & Electric Company, the Montana Power Company,
Wisconsin Power & Light Company, and
Pacific Power & Light Company,
Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 80-7641.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 17, 1982.
 
 George H. Williams, Jr., FERC, Washington, D. C., for respondent.
 
 
 1
 Eugene O. Gehl, Madison, Wis., for Wisconsin Power & Light Co.
 
 
 2
 Richard M. Merriman, Washington, D. C., Robert E. Sullivan, Butte, Mont., for Montana Power Co.
 
 
 3
 Gerry Levenberg, P.C., R. Keith Guthrie, Van Ness, Feldman, Sutcliffe, Curtis & Levenberg, Washington, D. C., for Utah Power & Light Co.
 
 
 4
 Joseph C. Swidler, Leva, Symington, Martin & Oppenheimer, Thomas M. Lemberg, William H. Taft, IV, Washington, D. C., Malcolm H. Furbush, Jack F. Fallin, Jr., San Francisco, Cal., for Pacific Gas and Elec. Co.
 
 
 5
 Hugh Smith, Portland, Or., for Pacific Power and Light.
 
 
 6
 Frederick T. Searls, William A. Keheo, III, William J. Madden, Jr., Thomas Debevoise, Debevoise & Liberman, Washington, D. C., for Hydroelectric Utility Co. Group and Alabama Power Co.
 
 
 7
 Daniel Davidson, Robert Bear, Washington, D. C., for City of Santa Clara, Cal.
 
 
 8
 Kirk Howard Betts, Law Office of Northcutt Ely, Northcutt Ely, Washington, D. C., for American Public Power Assoc.
 
 
 9
 Stewart L. Udall, Phoenix, Ariz., for City of Bountiful, Utah.
 
 
 10
 Christopher D. Williams, McCarty, Noone & Williams, Washington, D. C., for Clark Cowlitz Joint Operating Agency.
 
 
 11
 Petitions for Review of an Order of the Federal Energy Regulatory Commission.
 
 
 12
 Before RONEY, TJOFLAT and HATCHETT, Circuit Judges.
 
 HATCHETT, Circuit Judge:
 
 13
 We are faced with a purely legal question regarding the statutory construction of section 7(a) of the Federal Power Act (Act), 16 U.S.C.A. § 800(a) (West 1974). We affirm the decision of the Federal Energy Regulatory Commission.
 
 I. BACKGROUND
 
 14
 The Federal Power Act, 16 U.S.C.A. § 791a et seq. (West 1974), authorizes the Federal Energy Regulatory Commission (once known as the Federal Power Commission) to license public and private entities for the purpose of developing water power projects.[1] Licensees may develop these projects on waters over which the United States has jurisdiction, and may operate the projects for profit. A license is granted for a term of up to fifty years, at the expiration of which the United States may recover the project for its use or issue a new license to the same or a new entity. If the Commission grants a new entity a license, compensation must be paid to the original licensee for its "net investment" plus "severance damages."[2] This case involves a contest among potential licensees, including the present license holder, for a new license and presents the question of the preference due a municipal applicant.
 
 
 15
 Section 7(a) of the Act provides in pertinent part: "... in issuing new licenses to new licensees under section 15 hereof the Commission shall give preference to applications therefor by States and municipalities, provided the plans for the same are deemed by the Commission equally well adapted, ...."[3] Section 15(a) also states that: "... the Commission is authorized to issue a new license to the original licensee upon such terms and conditions as may be authorized or required under the then existing laws and regulations, or to issue a new license under said terms and conditions to a new licensee, ...." (Emphasis added.)[4]
 
 
 16
 The petitioners are thirty-eight privately owned utility companies licensed by the Commission to operate water projects.[5] The intervenors are publicly owned utilities that support the Commission's ruling.[6]
 
 
 17
 The competitors in this case are the City of Bountiful, Utah, a municipality, and Utah Power & Light Company, a private utility. Both entities applied for a license to operate the hydroelectric project operated by the private utility (Utah Power & Light) under a license which expired several years ago. The City of Bountiful, during the license contest, asked the Commission for a declaratory ruling clarifying its entitlement to the statutory preference in section 7(a). The Commission consolidated Bountiful's petition with that of another municipality that also sought a declaration of preference and initiated proceedings to resolve the issue.
 
 
 18
 Since only declaratory relief was requested, the Commission considered, as does this court, the issue to be one of statutory construction. The Commission issued two opinions on this matter. In its opinion and order declaring municipal preference applicable to hydroelectric relicensings, City of Bountiful, Utah (Opinion No. 88), No. EL78-43 (F.E.R.C. June 27, 1980), the Commission held:
 
 
 19
 (T)he preference of Section 7(a) of the (Act) favoring States and municipalities over citizens and corporations is applicable to all relicensing applications in which States or municipalities, and citizens or corporations, request successor licenses for the same water resources.
 
 
 20
 The Commission found that the preference to states and municipalities only applied where the plans submitted by the states or municipalities were as "equally well adapted" as the plans submitted by citizens or corporations. In essence, the Commission held that the preference given to states and municipalities by section 7(a) of the Federal Power Act always applies regardless of the identity of the parties competing for reissuance of a license. The Commission stated, however, that a state or municipality would gain the benefits of this preference only in a "tie-breaker" situation. The Commission subsequently denied rehearing, City of Bountiful, Utah (Opinion 88-A), No. EL78-43 (F.E.R.C. June 27, 1980), and petitioners brought this appeal.
 
 II. JURISDICTION
 
 21
 At the outset, we are faced with a jurisdictional question. Although all parties to this proceeding urge us to reach the merits, we cannot do so if we lack the power to act because the issue is not ripe for judicial review. Since the Commission only ruled in a declaratory fashion, we must determine whether this case is ripe for review in the absence of a final ruling on a particular license application. The Commission has not granted a license to any of the parties to this proceeding, and since the rule announced by the Commission only applies in a "tie-breaker" situation, it is arguable that the ruling herein may never concretely affect any of these parties. Courts are reluctant to apply declaratory judgments to administrative determinations "unless these arise in the context of a controversy 'ripe' for judicial resolution." Abbott Laboratories v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In explaining the ripeness doctrine, the Supreme Court stated that its basic rationale was "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies ...." 387 U.S. at 148, 87 S.Ct. at 1515. The Court also stated that the ripeness doctrine protects administrative agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." 387 U.S. at 148-49, 87 S.Ct. at 1515-16. The Abbott Court endorsed a two-step approach for analyzing ripeness which requires that we "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515.
 
 
 22
 The Supreme Court set forth four important factors to be used in making this evaluation. The four factors are:
 
 
 23
 (1) whether the issues presented are purely legal;
 
 
 24
 (2) whether the challenged agency action constitutes "final agency action," within the meaning of Section 10 of the Administrative Procedure Act, 5 U.S.C.A. 704 (West 1977);
 
 
 25
 (3) whether the challenged agency action has or will have a direct and immediate impact upon the petitioners; and
 
 
 26
 (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.
 
 
 27
 Pennzoil Co. v. FERC, 645 F.2d 394, 398 (5th Cir. 1981), (quoting Abbott, 387 U.S. at 149-54, 87 S.Ct. at 1515-18). A complete recitation of the factors supporting our conclusion is unnecessary. After full consideration, we find that the issue presented is purely legal, that the challenged agency action will have a direct and immediate impact upon the petitioners, the states, and all potential applicants, as well as the workload of the Commission. We further conclude that resolution of this issue now will foster effective enforcement and administration by the agency. The issue is ripe for judicial review. Having resolved this jurisdictional issue, we turn to the merits.
 
 
 28
 III. MUNICIPAL PREFERENCES: "NEW" v. "ORIGINAL" LICENSES
 
 
 29
 Petitioners contend that when Congress provided in section 7(a) of the Federal Power Act, 16 U.S.C.A. § 800(a) (West 1974), that the Commission give a relicensing preference to states and municipalities "in issuing licenses to new licensees under section 15 hereof," it intended the preference to be given to "new licensees" as defined in section 15, 16 U.S.C.A. § 808 (West 1974). They further posit that section 15 distinguishes the term "new licensee" from the phrase "original licensee." Because Congress clearly differentiated between the two terms, petitioners argue that it could not have intended the words "new licensee" to include the holder of the expired license. Thus, petitioners assert that the relicensing preference in section 7(a) is inapplicable to original licensees, but applies only to applicants seeking to acquire the project for the first time. The petitioners contend that the Commission clearly erred in interpreting section 7(a) because it necessarily concluded that Congress meant "any" when it said "new" in the Act.
 
 
 30
 We must determine whether in issuing licenses to new licensees under section 15 of the Act the Commission must apply a preference in favor of municipalities and states against all competing applicants or whether the preference applies only when the competing applicants are persons or entities other than the original licensee.
 
 
 31
 Section 7(a) provides a preference for states and municipalities in three situations:
 
 
 32
 (1) In issuing preliminary permits;
 
 
 33
 (2) in issuing licenses where no permit has been issued; and(3) in issuing licenses to new licensees under section 15.
 
 
 34
 We are concerned only with the third situation. The petitioners urge that we apply the plain meaning of the words "new licensees," as defined in the statute. They contend that the Commission erred in relying on the legislative history of the term "new licensees" cautioning that legislative history is relevant only if the term has no plain meaning. Tennessee Valley Authority v. Hill, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).
 
 
 35
 We agree with petitioners that statutory interpretation must begin with the language of the statute which must be interpreted in accordance with its "plain meaning." Fitzpatrick v. IRS, 665 F.2d 327 (11th Cir. 1982); United States v. Anderez, 661 F.2d 404 (11th Cir. 1981). We should depart from the official text of the statute and seek extrinsic aid for ascertaining its meaning only if the language is unclear or if apparent clarity leads to absurd results when applied. American Trucking Associations, Inc. v. ICC, 669 F.2d 957 (5th Cir. 1982). On the other hand, a reviewing court generally should adhere to the construction of a statute made by the agency charged with its execution unless there are compelling reasons indicating such construction is wrong. Florida Power & Light Co. v. FERC, 660 F.2d 668 (5th Cir. 1981). In United States v. American Trucking Association, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), the Supreme Court emphasized that where the plain meaning leads to results that are absurd or at variance with the policy of the enactment, a reviewing court may seek guidance wherever available. The Court stated:
 
 
 36
 When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."
 
 
 37
 310 U.S. at 543-44, 60 S.Ct. at 1063-64 (footnotes omitted).
 
 
 38
 Like the Commission, we easily overcome the plain meaning hurdle. The fact that the public companies here have accorded one reasonable interpretation to the words "new licensees" by relying on its context in section 7(a), and that private interests have accorded a different but reasonable meaning to the phrase by following the reference in section 7(a) to section 15 suggests that the meaning of the term "new licensees" is sufficiently ambiguous to merit resort to legislative history.
 
 
 39
 The Commission must act in each of the three licensing situations outlined above. As to all three, the Act clearly gives two different preferences. First, the Act gives a preference to states and municipalities when their plans are "as equally well adapted" as those of a private applicant. Second, the Act gives a preference as between applicants other than states and municipalities for plans best "adapted to develop, conserve, and utilize in the public interest the water resources of the region." These preferences cover all situations concerning competing applications. To follow the petitioners' theory of a "limited preference" in favor of municipalities and states against new applicants only when incumbent licensees are not competing changes the statute's entire preference structure. Instead of the two preferences outlined above applying to all cases, the preferences would operate only in some cases. We are not convinced that Congress intended such a result, which would cause administration of the Act by the Commission to be confusing and sporadic. Likewise, the adoption of a "limited preference" advantages incumbent licensees and thus leads to an absurd result. Under this theory, the only time a license holder would fail to obtain reissuance of a license would be when the water project was not profitable. Thus, states and municipalities realistically would have no preference at all because a preference to a losing project is worthless. Petitioners' position would lead to even more absurd results where the state or municipality was the license holder. By reapplying for the license, the state or municipality would lose its preference.
 
 
 40
 In finding that the state and municipal preference applies to all cases, the Commission properly relied heavily upon legislative history because the plain meaning advanced by petitioners leads to absurd results. The evidence on which the Commission relied included:
 
 
 41
 (1) A memorandum which was used in preparation of the Act, written on October 31, 1917 by Mr. O. C. Merrill, conceded by all parties to be an authority;[7]
 
 
 42
 (2) testimony of witnesses for power companies before congressional committees;[8]
 
 
 43
 (3) the fact that the House-Senate Conference Committee rejected a bill proposed by the Senate, which contained a different preference from that under examination, and the fact that the conference committee accepted the House bill which provided the present preference;
 
 
 44
 (4) correspondence between persons interested in the bill such as Gifford Pinchot, President of the National Conservation Association, and writings of O. C. Merrill.[9]
 
 
 45
 Although much of this material is weak, for the purpose of determining legislative intent, it is helpful and apparently all that is available.
 
 
 46
 We have reviewed the Commission's interpretation of this statute and deem such construction consistent with the statute's language, structure, scheme, and available legislative history. We must give great deference to the Commission's statutory interpretation. The Supreme Court has announced the rule that " 'the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong ....' " CBS, Inc. v. FCC, 453 U.S. 367, 382, 101 S.Ct. 2813, 2823, 69 L.Ed.2d 706, 720 (1981). The Fifth Circuit has also applied this principle in reviewing FERC decisions. Falcon Petroleum v. FERC, 642 F.2d 780, 783 n.3 (5th Cir. 1981). We are aware of petitioner's assertion that the Commission has inconsistently interpreted section 7(a), but dismiss this argument as insubstantial and speculative. The statutory interpretation urged by petitioners is outweighed by Commission interpretations, even if inconsistent, not based upon activities contemporaneous with passage of the statute.
 
 CONCLUSION
 
 47
 We hold that the state and municipal preference in section 7(a) of the Federal Power Act applies in all competitive relicensing cases, not just those where the original licensee is not an applicant. We further hold that the preference applies in a tie-breaker situation.
 
 
 48
 Accordingly, the order of the Commission is affirmed.
 
 
 49
 AFFIRMED.
 
 
 
 [1]
 A "water power project" includes all facilities needed to harness the energy of flowing water to produce turbine generated electric energy
 
 
 [2]
 The term net investment is defined at 16 U.S.C.A. § 796 (1974) to mean:
 (13) "net investment" in a project means the actual legitimate original cost thereof as defined and interpreted in the "classification of investment in road and equipment of steam roads, issue of 1914, Interstate Commerce Commission", plus similar costs of additions thereto and betterments thereof, minus the sum of the following items properly allocated thereto, if and to the extent that such items have been accumulated during the period of the license from earnings in excess of a fair return on such investment: (a) Unappropriated surplus, (b) aggregate credit balances of current depreciation accounts, and (c) aggregate appropriations of surplus or income held in amortization, sinking fund, or similar reserves, or expended for additions or betterments or used for the purposes for which such reserves were created. The term "cost" shall include, insofar as applicable, the elements thereof prescribed in said classification, but shall not include expenditures from funds obtained through donations by States, municipalities, individuals, or others, and said classification of investment of the Interstate Commerce Commission shall insofar as applicable be published and promulgated as a part of the rules and regulations of the Commission ....
 The term "severance damages" is explained in 16 U.S.C.A. § 807 as follows:
 (a) ... (B)efore taking possession it shall pay the net investment of the licensee in the project or projects taken, not to exceed the fair value of the property taken, plus such reasonable damages, if any, to property of the licensee valuable, serviceable, and dependent as above set forth but not taken, as may be caused by the severance therefrom of property taken, and shall assume all contracts entered into by the licensee with the approval of the Commission. The net investment of the licensee in the project or projects so taken and the amount of such severance damages, if any, shall be determined by the Commission after notice and opportunity for hearing. Such net investment shall not include or be affected by the value of any lands, rights-of-way, or other property of the United States licensed by the Commission under this Chapter by the license or by good will, going value, or prospective revenues; nor shall the values allowed for water rights, rights-of-way, lands or interest in lands be in excess of the actual reasonable cost thereof at the time of acquisition by the licensee ....
 
 
 [3]
 Section 7(a) of the Federal Power Act, 16 U.S.C. § 800(a) provides:
 Sec. 7. (As Amended August 26, 1935 and August 3, 1968.) In issuing preliminary permits hereunder or licenses where no preliminary permit has been issued and in issuing licenses to new licensees under section 15 hereof the Commission shall give preference to applications therefor by States and municipalities, provided the plans for the same are deemed by the Commission equally well adapted, or shall within a reasonable time to be fixed by the Commission be made equally well adapted, to conserve and utilize in the public interest the water resources of the region; and as between other applicants, the Commission may give preference to the applicant the plans of which it finds and determines are best adapted to develop, conserve, and utilize in the public interest the water resources of the region, if it be satisfied as to the ability of the applicant to carry out such plans. (41 Stat. 1067; 49 Stat. 842; 16 U.S.C. 800(a) ) (Emphasis added.)
 
 
 [4]
 Section 15 of the Federal Power Act provides:
 Sec. 15. (As amended August 3, 1968.) (a) That if the United States does not, at the expiration of the original license, exercise its right to take over, maintain, and operate any project or projects of the licensee, as provided in section 14 hereof ..., the commission is authorized to issue a new license to the original licensee upon such terms and conditions as may be authorized or required under the then existing laws and regulations, or to issue a new license under said terms and conditions to a new licensee, which license may cover any project or projects covered by the original license, and shall be issued on the condition that the new licensee shall, before taking possession of such project or projects, pay such amount, and assume such contracts, as the United States is required to do, in the manner specified in section 14 hereof ...: Provided, That in the event the United States does not exercise the right to take over or does not issue a license to a new licensee, or issue a new license to the original licensee, upon reasonable terms, then the Commission shall issue from year to year an annual license to the then licensee under the terms and conditions of the original license until the property is taken over or a new license is issued as aforesaid. (Emphasis added.)
 
 
 [5]
 The thirty-eight privately owned utility companies have categorized themselves for purposes of this case into three groups: the hydroelectric utility company group; Pacific Gas & Electric Co.; and Utah Power & Light Co., Montana Power Co., and Wisconsin Power & Light Co
 
 
 [6]
 The publicly owned utilities that have intervened to support the Commission's opinion are: the American Public Power Association; the City of Bountiful, Utah; the City of Santa Clara, California; and the Clark-Cowlitz Joint Operating Agency, Washington
 
 
 [7]
 Among the materials relied on by the Commission was a memorandum written on October 31, 1917, by O. C. Merrill, which explained the objectives of the municipal preference. The memo, in pertinent part, provided:
 Licenses should terminate at the end of the fifty-year period in order that the United States may at that time dispose of the privileges as the public interest and the law and regulations then existing may require. In such disposition the order of preference should be as follows: (1) the United States-to acquire properties and operate them for Governmental purposes, (2) the State or municipality-to acquire the properties and operate them for municipal purposes, (3) the original licensee-to secure renewal of the license under conditions prescribed by then existing law and regulations, (4) any other applicant-under similar conditions. These provisions will leave the way open for future public ownership and operation if the experience of the next fifty years shall have established the wisdom of such a policy.
 
 
 [8]
 The Commission also relied upon testimony before the House Special Committee where a witness for private industry supporting the bill stated: (Hall is the witness.)
 MR. CANDLER. Now then you do understand that under this bill the Government of course has the first right to retake the property?
 MR. HALL. Yes, sir.
 MR. CANDLER. Then do you further understand it that a provision of the bill further is that some of the licensees might be preferred over the first licensee?
 MR. HALL. The bill provides that; yes, sir. They can take it away and give it to somebody else.
 MR. CANDLER. Then the original licensee would have only the third opportunity to count on his lease.
 MR. HALL. That is the way I understand it.... (Emphasis added.)
 The Commission also relied on a conversation between a member of the House Committee and the Secretary of the Interior at Special Committee Hearings. That colloquy was:
 Mr. Hamilton. Mr. Secretary, I understood you to say that as between the original licensee and another, assuming there is a licensee who is a bidder at the end of 50 years, as between him and the other bidder, you would give the preference to the original licensee?
 Secretary Lane. At the same figure.
 Mr. Hamilton. Would you give that preference to the original licensee, assuming that the other bidder was a municipality?
 Secretary Lane. I do not think I would.
 
 
 [9]
 The Commission also relied upon a letter of Gifford Pinchot, President of the National Conservation Association, to the Chairman of the Committee on Commerce, which stated, in part:
 The obvious intention of Sec. 7, is to give preference to States and municipalities; and you will not be accomplishing this purpose surely, unless you insert after the word "issued" in line 11, page 12, of your bill, the words "and in issuing licenses to new licensees under Sec. 15 hereof," or words of like import.
 Letter from Gifford Pinchot to Senator Jones (June 25, 1919), reprinted in City of Bountiful, Utah, slip op. at 28.
 Section 7 of the bill was then changed to include the Pinchot language.
 In the development of water power by agencies other than the United States, the bill gives preference to States and municipalities over any other applicant, both in the case of new developments and in the case of acquiring properties of another licensee at the end of a license period.
 The Commission also relied upon the writings of O. C. Merrill, who shortly before the President signed the bill, explained the preference section as follows:
 For development by agencies other than the United States preference is given to States and municipalities. A similar preference is given for the acquisition of the properties of other licensees at the end of a license period.
 Memorandum from O. C. Merrill to President Wilson (June 8 or 9, 1920), reprinted in City of Bountiful, Utah, slip op. at 31.